Good morning, John Ballas on behalf of the appellant, Jay Johnson. The court issued an order asking the parties to address a question, so I think I should start with that one. The question is whether, if prepared to discuss whether a violation of Johnson's Sixth Amendment right to jury trial with respect to his sentence for attempted murder, if any, was harmless, because a jury would have found the existence of the aggravating factor that the victim was particularly vulnerable, and then the application of the California Supreme Court's People v. Sandoval decision to that question. I think that People v. Sandoval has a lot to say about the standard of review and the harmlessness, and it emphasizes on a number of points the difficulty in this type of an error in this type of a situation that a reviewing court would have in determining that an error is harmless. That's because of the nature of the question is that for two reasons they emphasize. One is that a defense attorney would not necessarily present the same type of evidence or make the same kind of a record when it's to a judge rather than to a jury, and so you may not have a complete record. And second, and they specifically mention the vulnerable victim type of an issue, that in those vague and subjective standards it's difficult for a reviewing court to conclude with confidence that the issue had had it been submitted to the jury, the jury would have accessed the facts in the same manner as the trial court did. I think that the question ultimately is whether the court can be confident that no jury would have a reasonable doubt as to whether or not the victim was vulnerable. And I think it should be limited to the victim on the attempted murder count, Ron Booker. That's the one that the enhancement, the upper term was imposed on, and that's what's at issue. So I'd like to go to the evidence on that because I went back and I reviewed the record and there's definitely information that cuts both ways. Mr. Booker testified that he had an accident, fell in the snow two months before, and he had to have surgery on his right quadriceps. And as a result, he was off of work and he was wearing a flex cast, which limited his mobility. And that is what he testified to at trial. On the other hand, a defense attorney would argue that there's also evidence that Mr. Booker was 6'3", weighed 330 pounds. That's at Reporter's Transcript, page 250. The sentencing judge mentioned at the time of sentencing that he thought valiantly and thought kind of better than an average person. And the testimony at trial was that he was able to make a fist and punch Mr. Johnson in the head. So from your perspective, vulnerability has nothing whatsoever to do with his surgery and his recuperation. As a fact, he was a big guy and he was able to put up some resistance. No, I think I have to admit it does. But I think at the same time, when the jury, the question is whether a jury would have a doubt as to would they decide beyond a reasonable doubt that the victims were particularly vulnerable. I don't think that's a clear-cut question, because he's 6'3", 330, because he thought. He said that also in his testimony at page 254, he actually grabbed Mr. Johnson's jacket and he was trying to get him close enough to be able to break his neck. And so I think that there's an argument both ways to the extent that I don't think the court can say that the error is harmless. And the other kind of point I would emphasize here is, especially in terms of when we talk about vulnerable victim. I was a federal public defender and I work primarily in the federal courts. We usually talk about some kind of selection of the victim as being the crime that occurs because you pick the victim because they were particularly vulnerable. There's no evidence of that here. It basically went into their house at 5.30 in the morning and as a result, these incidents applied. But there's nothing that they selected the victim. And due to the subjective and kind of vague standard in this type of a context,  Does the vulnerable victim approach come into play when, say, you've knocked someone unconscious? So at that point, though he may have been totally non-vulnerable to that, he is now unable to defend himself or do anything. And at that point in my hypothetical, you murder him. Would that be a vulnerable victim or not? Well, I think that's a little bit different issue and it doesn't directly apply here because that would have to do with Mr. Booker's wife, Laurie Namy, who was the murder victim, who actually died. Well, that's true and that's what made me think of it, but isn't it also true that Johnson reached a point where he was, I'm sorry, where Booker reached a point where he was incapacitated and Johnson continued to beat him up? I don't know if he was ever incapacitated. I guess he was underground and he was playing dead, according to his testimony, for a while. But then he got back up and actually kind of struggled back up and actually they fought a little bit. So I don't think it was, there's no testimony that he was on the ground and then he, with Laurie Namy, that there was testimony that actually stomped on her when she was unconscious. There was never any testimony that Mr. Booker was unconscious or incapacitated. I'm going to reserve my remaining time. Reserve your time. Very well. Thank you. Very well. Let's hear from the government. May it please the Court. Justin Riley on behalf of the Warden. To find error in this case, this Court would have to interpret the Sixth Amendment differently than this Court has in the past and the Supreme Court has clearly established in its precedent. The sentence here only has to be authorized by a jury verdict or by admissions from the defendant. Here, the sentence was authorized by the jury's verdict. The jury found beyond a reasonable doubt on two separate counts that the appellant here personally used a deadly or dangerous weapon. Two separate counts. Yes, but you can't piggyback that because you can't use the weapon thing twice. It's already in the sentence. Actually, only one of them was in the sentence. I refer this Court to the trial court at sentencing. Only imposed one of those personal use enhancements. And the court of appeal referenced that in denying this claim at excerpts of record page 25 under Roman numeral IV. It says the upper term may be imposed when the defendant was armed with or used a weapon at the time of the commission of the offense. It's at excerpts of record 25. Quoting the court of appeal, the jury found true allegations that the defendant used a deadly weapon as to all counts. And that fact was not used to impose an enhancement under that section because it was stayed by the court. Two separate enhancements. Only one was used. That's why the court of appeal here found that the upper term was authorized by the jury's verdict. The court of appeal only had to use one of the enhancements because the other one was stayed. Okay. There's no double-use problem here because of that reason. Once the upper term was used. Let me ask one other question. If this goes up to the court of appeals and Justice Scalia gets this case, he's been so adamant that everything has to go to the jury. Any factual question has to go to the jury. If you were writing the brief to sustain our verdict because we agreed with you, how would you write that brief to show Justice Scalia that this is okay? This is okay. And I'm going to grab the court of appeal opinion again. This is okay because as the court of appeal found at excerpt of record page 25, California allowed for an upper term here if the defendant was armed with or used a deadly weapon at the time of the offense or a weapon at the time of the offense. That was actually presented to the jury. They were presented with jury forms that said, did the defendant here use a deadly or dangerous weapon? One was the tree branch he entered the home with. The second, he picked up and used a solid oak television table. That's what he dispatched the wife with. And so with regard to count two, the count at issue here, the jury found that he used both a tree branch and the oak table to attempt to kill Mr. Booker. So from the State's perspective, the jury did find both facts. That's right. And there's no judicial involvement independent of that, other than to apply what the jury found in making the sentence determination. Other than to impose the sentence. Right. Yes, I agree with you. And there's no double-use problem, again, because the trial court only imposed  Two enhancements in position of one. I'm not aware of any case that, like this one, where the judge stayed the use of one of those in the initial application and then used it for something else. I've not seen that before. Is there a case that really deals with that? I'm not aware of a case that deals with two specific enhancements and the use of only one. That's a little unusual, it seems to me. If the judge had not stayed this, you'd have a problem, I agree. Under California law, I agree. Under California law. So the question is, does the fact that the trial judge used the stay, in a sense, put it aside and then used it for something else, is that authorized? Well, you have to remember the nature of a Sixth Amendment violation. It's not necessarily what the trial court was thinking. It was only that the sentence was authorized. The trial court could have been thinking, hey, it's Tuesday, I don't like this guy, I'm going to impose the upper term. He didn't have to be thinking about the enhancement here. The fact of the jury verdict authorized the sentence, just like the fact of the jury verdict authorized the midterm here. There's no argument that the trial court could properly, under the Sixth Amendment, impose the midterm with no reasons at all, nothing in his head. And that's exactly the same analysis here for the Sixth Amendment on the upper term. As long as the jury verdict authorized the sentence, the trial court doesn't have to think anything under the Sixth Amendment. I'd love any other questions on that, and I can move on to the vulnerability issue if you'd like. As to vulnerability, I'd like to bring up two things. Once again, my initial argument is that there's actually no Sixth Amendment violation. The sentence was completely authorized. But as to vulnerability, the victim, albeit a 6'3 man, 330 pounds, which some might argue would leave him more vulnerable, sounds a little overweight to me. But you have to remember that most of this altercation happened from his knees. He was immediately come and hit over the head, and he was on his knees the rest of the time. I think he stood up once. The court of appeals opinion in the recitation of the facts at one point says the victim had to push his scalp out of his face and back onto his head so that he could see and continue the fight. He was incapacitated. At that point, the defendant left an incapacitated, scalp-hanging-down victim, took the TV tray, and dispatched the wife. Then came back to the still incapacitated victim, moving the scalp, and started fighting with him again. Remember, it was also 5 a.m. He was changing his bandages at the time. His wife was sleeping in the other room. It was a secluded area. They didn't live around anywhere. Didn't even have their doors locked. So this was definitely a vulnerable victim as well. If this Court chooses to reach or deny the claim based on vulnerability, the record is replete with evidence to support that. I'm not disagreeing with you. Yes. Is there any case laws or any statute that would help define what it means to be vulnerable, or is that just left to what the jury impliedly found? Or what our common sense tells us? I think a fair amount of common sense wouldn't hurt here, but Butler v. Curry, which I cited in my briefs, actually goes into a harmless error analysis based on a vulnerable victim. They collect a few California cases on what it means to be vulnerable, albeit in terms of domestic violence mostly, but they define vulnerability as well. Butler v. Curry, a Ninth Circuit, I believe it's a, I have the address here if you'd like it, 2008 case. This is really the point I was asking your adversary about. It's one thing to define vulnerability in terms of what the person is before you launch your attack. They're disabled or whatever. It's something else to say that at some point in the attack, they become incapacitated and therefore vulnerable. That may be the law, but it's not so clear to me that that's the law. Actually, Butler v. Curry collects a case just like that. The case that Butler v. Curry cites, only in a cursory fashion, has to do with a victim that a defendant came along and performed some sort of assault on. And that victim had been previously shot. I can't remember by who, whether or not it was the same victim or not, but because he had been injured prior to the final assault, that was enough to show that the victim was vulnerable as well. Butler v. Curry collects those cases. And they're California cases, defining what vulnerability is. I'd love to answer any other questions. All right. I think we're fine. Thank you. Thank you. Rebuttal. I just want to respond briefly to the argument that there were two enhancements for use of a deadly weapon. I don't think that should change the overall calculus analysis here, because they're both basically two weapons that were found during the commission of the same offense. They're both kind of essentially the same enhancement. The judge did impose one as an enhancement and just stayed the other under the law. You're saying that the two deadly weapons are the same for purposes of enhancement? Well, essentially the law says you can't impose two deadly weapon enhancements during the same offense. Right. One was stayed here. The judge didn't do that. At least that was my question to your opposing counsel. The judge said he didn't use those two. He stayed one. He only applied one. He used the other one for something else. But are you saying that the concept of a stay doesn't help here? I don't think it helps the attorney general in this case. And why is that? Because essentially if you look at the California Rules of Court 4.420, as they were in effect in 2005, subsection C, to comply with section 1170B, a fact charge found as an enhancement, may be used as a reason for imposing the upper term only if the court has discretion to strike the punishment for the enhancement and does so. The use of a fact of an enhancement to impose the upper term of imprisonment is an adequate reason for striking the additional term of imprisonment. My understanding of the law is not that the judge has discretion whether or not to strike that. He's not required to. He's not required to strike the second enhancement for a deadly weapon, but he's required to and that that response, that section, is referring to if you have one section and one enhancement for a deadly weapon and the judge has discretion to strike that. Well, yeah. You seem to be disagreeing with the concept of a stay, and yet it seems to be kind of a circular argument. You agree that if there had just been one deadly weapon, there would be no problem, right? The problem is that there are two deadly weapons as found by the judge. If there was just one, the government, the prosecutor wouldn't have any argument here because Well, about a second. Right. But I mean, the judge, as far as his initial sentence before the enhancement, all he needed was one deadly weapon, right? Right. Okay. So they've got a surplus deadly weapon found by the jury. And what I want to find out is under California law, is the judge entitled to say, I'm not going to pay any attention whatsoever to the second deadly weapon, but I am going to use it in something else, totally different issue, part of the sentencing, but not here. What's the matter with that? Well, one thing, he didn't use it here. I mean, he never referred to the deadly weapon, either deadly weapon, as a reason for imposing the upper term. He gave two reasons for it. One is that the vulnerable victim and the second was the exceptionally brutal nature of the crime. He never used the deadly weapon at all. Okay. Any other questions? Thank you. Thank you both. The Court will take a very brief recess and we'll return in just a moment. And at that time, we will hear argument in United States v. Fidel. Thank you.
judges: Rakoff, Wallace, Smith